## Josephine M. Hosto, Appellant, v. Charles W. Hosto, Appellee.

1. HUSBAND AND WIFE, § 264*—*when decree refusing separate maintenance sustained.* Decree refusing separate maintenance *held* not against the weight of the evidence where complainant's testimony of husband's alleged misconduct and neglect was disputed and not sufficiently corroborated, and there was evidence that the wife was unduly jealous.

2. HUSBAND AND WIFE, § 262*—*burden of proof in separate maintenance proceeding.* In. an action for separate maintenance, the wife must prove such conduct upon the part of the husband as would justify the court in concluding that she was living separate and apart from him without her fault.

3. HUSBAND AND WIFE, § 246*—*what essential to allowance of solicitor's fees in separate maintenance proceeding.* Final decree allowing a certain amount as solicitor's fees in the prosecution of the suit, *held* erroneous where no evidence was heard as to what the services rendered were worth nor what the usual and customary fee for such services was in the court.

4. APPEAL AND ERROR, § 1396*—*when chancellor's findings will not be disturbed.* In chancery cases, where the evidence is con-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

flicting and heard in open court, the error in finding as to fact should be clear and palpable to authorize a reversal.

5. APPEAL AND ERROR, § 726*—*when evidence to support an allowance for solicitor's fees must be preserved.* Evidence to sustain an allowance of solicitor's fees in a separate maintenance proceeding must be preserved in the record.

Appeal from the Circuit Court of Madison county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the March term, 1913. Affirmed in part and reversed and remanded in part. Opinion filed October 9, 1913.

C. H. BURTON and WILLIAMSON, BURROUGHS & RYDER, for appellant.

E. B. GLASS and E. G. HILL, for appellee.

Mr. PRESIDING JUSTICE McBRIDE, delivered the opinion of the court.

On November 21, 1910, the appellant filed a bill in the Circuit Court of Madison county, alleging that she was married to appellee on October 5, 1897, and that they lived together as husband and wife until November 19, 1910, when she was compelled with her children, Eleanor Hosto ten years old and Wilbur Hosto seven years old, to abandon the appellee and seek a home with her friends and acquaintances; in this bill she alleges that the defendant had in divers ways been guilty of cruelty and had become infatuated with one Emma Miller and that his affections for the appellant were alienated; that he frequently quarreled with appellant and used towards her abusive and threatening language and had at times offered to strike her. To this bill the defendant filed an answer denying the several allegations made by the appellant. The cause was heard by the chancellor and several witnesses were produced and examined in open court. The evidence is quite voluminous, covering several hundred pages of record and over two hundred pages of abstract, but after a careful consideration of this evi-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

dence we cannot say that the weight of the evidence was manifestly against the finding of the chancellor. It is true that appellant testified that on two or more occasions the appellee threatened to assault her and that he at one time pulled her hair; that on other occasions he cursed and abused her and told her that he had more affection for the Miller woman than he had for her, and that he wanted her to leave; that he also charged her with infidelity with divers men and that he had lost his affection for her because of the fact that she had permitted herself to bear children, but all of this is denied by the appellee in positive terms and in many of the statements made by appellant she is wholly uncorroborated. The evidence with reference to his affection for Mrs. Miller consists principally in his having met Mrs. Miller at the residence of Walter Rinkle, a brother of the appellant; that he went there for the purpose of assisting Mrs. Miller in the sale of a piano, from which sale when completed the appellant was to receive some of the commission. That appellee and Mrs. Miller remained at the home of Rinkle over night, the appellee and Rinkle occupying one room and Mrs. Miller and Mrs. Rinkle occupying another room. It is claimed that while they were in the hall passing to their respective rooms that appellee took hold of Mrs. Miller and Mrs. Rinkle, pressed them to each other and said "look at these women fight," thereupon Walter Rinkle said, "Come on kids lets go to bed" and they each retired to their respective rooms. Another instance was that one day while appellee, E. E. Miller and a man by the name of Schwartz were engaged in cutting hay for Mr. Miller, the husband of Emma Miller, that Mrs. Miller brought the dinner out to them and that after eating dinner appellee and Mrs. Miller lay down under the wagon with their faces close to each other, in the presence of her husband; that another time, while on the road in their respective buggies they stopped and talked to each other for some

time, and some other circumstances were given that are of less importance but all of these matters are denied by the appellee or explained so that they have the appearance of meetings either concerning business matters or neighborly chats; at least we cannot say that the chancellor erred in finding that there was nothing to convince him that any undue intimacy existed in the relation of these parties. The evidence tends to show that appellant became very jealous of Mrs. Miller and that as soon as this was discovered the appellee and Mrs. Miller both refrained from having any conversation whatever one with the other, even over the telephone.

It is also true that appellant testified that appellee told her that he thought more of Mrs. Miller than he did of her and it further developed upon the trial that just after a school election in which Mrs. Miller had been assisting appellant in securing the election of appellee as director, that while riding home that evening appellee said, as it is claimed, to some of appellant's relatives that he thought more of Mrs. Miller than of his own family, or that in substance. This, however, is all denied by appellee. The alleged assault by appellee with a chair, as explained by him, shows that he simply raised the chair for the purpose of preventing appellant from further assaulting him. The several charges of abusive language are denied by appellee, and in fact, every serious charge made by appellant is denied by him. In his testimony he claims that the difficulty grew out of the fact that she failed to receive any commissions from Mrs. Miller, as had been promised and this enraged her against Mrs. Miller, she was also angered by appellee's refusal to deed her some Texas land that he was purchasing. It is true that during the last two or three years of their married life appellant and appellee have apparently had considerable strife but they both appear to be possessed of plenty of temper and not with very much disposition to bear

with each other's faults or forgive the shortcomings of each other, and we think the chancellor was fully warranted in finding that they were both more or less to blame for the condition in which they now find themselves.

The chancellor heard the testimony of all of the witnesses, saw their conduct and bearing while upon the stand and was much better calculated to determine from this who was telling the truth about these several matters than we can from the printed record. It has been repeatedly held by the higher courts of this state that where the chancellor hears the testimony of the witnesses in open court, sees them upon the stand, that his judgment of their credibility is entitled to the same weight as the judgment of the jury upon the credibility of witnesses, and that a court of review has no right to disturb his findings unless it can be said that such finding is manifestly against the weight of the evidence. "In chancery cases, where the evidence is conflicting and heard in open court, the error in finding as to fact should be clear and palpable to authorize a reversal." *Elmstedt v. Nicholson,* 186 Ill. 580. While we recognize the rule that the appellant would not necessarily be required to prove such conduct upon the part of the husband as would entitle her to a divorce, yet she must prove such conduct or neglect upon the part of her husband as would justify the court in concluding that she was living separate and apart from him without her fault. We are not able to say that the decree refusing appellee separate maintenance was so manifestly wrong as to warrant a reversal and as to such part of the decree it will be affirmed.

A cross-error has been assigned by appellee alleging that the court erred in its final decree, approved April 15, 1912, in requiring the appellee to pay to the appellant three hundred dollars as solicitor's fees incurred in the prosecution of this case. It appears from the record that on February 14, 1911, appellant filed a petition for temporary alimony to pay the necessary

expenses that would arise in the trial of this suit; that an answer was filed to this petition and that on March 1, 1911, an order was entered directing that appellee pay complainant one hundred dollars attorney's fees and twenty dollars per month as temporary alimony. That on July 15, 1912, and at the time a final decree was rendered in this cause it was ordered by the court upon application of complainant that the defendant pay to the complainant the sum of three hundred dollars as and for solicitor's fees incurred in the prosecution of this suit. No application is set out in the record and no evidence was heard as to what the services rendered or to be rendered were worth, or what the usual and customary fee for such services was in that court. So far as we are able to ascertain from this record this application was for the services that had been rendered in the trial in the Circuit Court and not for the prosecution of an appeal to this court. It is said in the case of *Anderson v. Steger,* 173 Ill. 119: ''The provision of the statute is to enable the wife to maintain the suit, and it contemplates that the provision shall be made in advance. The performances of services by a solicitor where such provision is not made creates no liability against the husband. The wife cannot bind her husband to pay the expenses of prosecuting an action for separate maintenance or divorce against him, and her solicitor cannot maintain an action at law for such services. If, under the guise of a temporary allowance to enable the wife to maintain her suit, a solicitor has a right to recover for services rendered for which no allowance has been made, there would be no difference whatever between that right and the right to maintain an action at law. The only difference would be in the court, and the right would be a right to collect from the husband the value of services rendered for the wife. The statute does not go to the extent of compelling the husband to pay such expenses as she has seen fit to incur. The statute gives no warrant for a

solicitor performing services upon the credit of the husband, in anticipation of an allowance, further than necessary to present the question to the court." A difference is made by the court in the case last above cited in allowing solicitor's fees where the complainant has been successful, and where they have not been successful. Even if a solicitor's fee could be allowed under such circumstances it would be necessary before a court would be authorized to make the allowance to present testimony showing the value of such services. *Metheny v. Bohn,* 164 Ill. 495; *Goodwillie v. Millimann,* 56 Ill. 523. "The rule that the evidence to sustain an allowance of this character must be preserved in the record has been repeatedly stated by this court." *Hunter v. Hunter,* 121 Ill. App. 388.

We think the court erred in allowing the solicitor's fee in the manner it did, as appears from the record of this case, and that part of the decree requiring the defendant to pay the complainant three hundred dollars as solicitor's fee incurred by her in the prosecution of this case was erroneous and as to such should be reversed and remanded.

The decree is affirmed in part and reversed and remanded in part.

*Affirmed in part and reversed and remanded in part.*